IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| CODY GOLDTOOTH,<br><br>Plaintiff,<br><br>v.<br><br>THE WESTERN SUGAR COOPERATIVE,<br><br>Defendant,<br><br>v.<br><br>DSI MECHANICAL, LLC and ZURICH AMERICAN INSURANCE COMPANY,<br><br>Third-Party Defendants. | 8:20-CV-00113<br><br><br><br>COMPLAINT AND JURY DEMAND |

## INTRODUCTION

This case has been brought because Cody Goldtooth (Goldtooth) suffered catastrophic injuries on August 3, 2016, as a result of the negligence of the Defendant, The Western Sugar Cooperative (Western) at its facility located at 2100 East Overland, Scottsbluff, Nebraska 69361. Goldtooth seeks compensation for the damages caused to him. DSI Mechanical, LLC (DSI) was Goldtooth's employer and through its insurer, Zurich American Insurance Company, (Zurich) has paid $1,604,806.04 in workers' compensation benefits to Goldtooth and his healthcare providers.

## THE PARTIES

1. Goldtooth is a citizen of Page, Arizona.

2. Western is incorporated in Colorado, has its principal place of business in Denver, Colorado, and operates facilities in Montana, Wyoming, Colorado, and Nebraska.

3. Western owns and operates a manufacturing facility at 2100 East Overland Drive, Scottsbluff, Nebraska.

4. Western is a citizen of Colorado for the purpose of determining diversity jurisdiction.

5. At all relevant times, DSI was incorporated in South Dakota and had its principal place of business in Sioux Falls, South Dakota.

6. DSI is no longer in business.

7. DSI is a citizen of South Dakota for the purpose of determining diversity jurisdiction.

8. At all relevant times, DSI carried workers' compensation insurance coverage with Zurich. Zurich is incorporated in Illinois and administered the claim from Illinois.

9. Zurich is a citizen of Illinois for the purpose of determining diversity jurisdiction.

JURISDICTION

10. This court has personal jurisdiction over Western because Western maintains a manufacturing facility, terminals, and receiving stations in Nebraska.

11. This court has personal jurisdiction over DSI and Zurich because DSI and Zurich were doing business in Nebraska.

12. This court has subject matter jurisdiction over this action pursuant to 28 U.S.C.A. §1332.

13. Diversity of citizenship is present between the parties.

14. The amount in controversy is substantially in excess of seventy-five thousand dollars, exclusive of interest and costs.

15. This Court has subject matter jurisdiction over this action.

16. This Court has personal jurisdiction over the parties.

## VENUE

17. Venue is proper in this Court pursuant to 28 U.S.C.A. §1391 because a substantial part of the events and omissions giving rise to the claim occurred in the District of Nebraska.

## FACTS

18. Western is in the business of processing sugar beets into sugar and selling the sugar for profit.

19. Western is registered to do business in Nebraska.

20. Western owns and operates a sugar beet processing facility at 2100 East Overland Drive, Scottsbluff, Nebraska.

21. In 2015 and 2016, Western undertook an expansion project at its processing facility at 2100 East Overland Drive, Scottsbluff, Nebraska.

22. Western owned the premises at 2100 East Overland Drive, Scottsbluff, Nebraska during the expansion project.

23. Western retained possession of the premises at 2100 East Overland Drive, Scottsbluff, Nebraska, during the expansion project.

24. Western retained control of all aspects of the premises at 2100 East Overland Drive, Scottsbluff, Nebraska, during the expansion project.

25. Western had supervisor personnel and safety personnel on the jobsite at 2100 East Overland Drive, Scottsbluff, Nebraska during the expansion project.

26. During the expansion project, Western employed several safety personnel, including Andrew Johnson, David Devore, and John Salway, all of whom were involved in the expansion project.

27. Western had access to all areas of the premises during the expansion project.

28. Western acted as its own general contractor for this expansion project.

29. Western contracted with Paul Reed Construction to perform demolition work in the "main plant building."

30. Paul Reed Construction's scope of work in its contract with Western included demolishing and removing material on the second level of the "main plant building."

31. The only feasible way for Paul Reed Construction to remove demolished material from the second level of the "main plant building" was to cut a hole in the floor of the second level.

32. Paul Reed Construction sought permission from Western to cut the hole.

33. Paul Reed Construction intended to seal the hole once they were done using it.

34. Western, through its employee, Charles Gibbs, approved Paul Reed Construction's request to cut a hole in the floor of the second level of the "main plant building."

35. Paul Reed Construction cut a hole approximately three feet by six feet in the floor of the second level of the "main plant building."

36. On or about May 1, 2016, three days after cutting the hole, Paul Reed Construction informed Western, through its employee, Charles Gibbs, that they were done using the hole.

37. On or about May 3, 2016, Paul Reed Construction asked Western for permission to seal the hole with concrete.

38. Western directed Paul Reed Construction to leave the hole unsealed.

39. Paul Reed Construction complied with Western's request and did not seal the hole.

40. On or about May 3, 2016, Paul Reed Construction turned control of the second level of the "main plant building" over to Western.

41. Western contracted with DSI to install new processing equipment in the "main plant building" as part of the expansion project.

42. Western controlled all aspects of the expansion project including the safety and condition of the premises.

43. On August 3, 2016, Goldtooth was employed by DSI as an ironworker.

44. On August 3, 2016, Goldtooth was twenty-eight years old.

45. On August 3, 2016, Goldtooth had been working on Western's premises located at 2100 East Overland Drive, Scottsbluff, Nebraska, for approximately one weeks.

46. On August 3, 2016, Goldtooth was a lawful entrant on Western's premises located at 2100 East Overland Drive, Scottsbluff, Nebraska.

47. On August 3, 2016, Goldtooth and DSI were working on the third level of the "main plant building."

48. On August 3, 2016, Goldtooth and DSI were not and had not been working on the second level of the "main plant building."

49. On August 3, 2016, at approximately 9:00a.m. Goldtooth's supervisor instructed him to find a piece of plywood to protect some of the machinery DSI was installing from welding sparks.

50. Goldtooth went to the second level of the "main plant building" in search of a piece of plywood.

51. Goldtooth approached the hole that was covered with a piece of plywood, lifted the plywood, and fell through the hole eighteen feet onto the ground below.

52. Goldtooth was unaware of the hole underneath the plywood and did not know of the risk or danger the hole posed.

53. On August 3, 2016, as a result of his fall at Western's facility, Goldtooth sustained catastrophic injuries including facial fractures, traumatic subarachnoid hemorrhage, and a traumatic brain injury.

54. On August 3, 2016, as a result of his fall at Western's facility, physicians removed part of the left frontal lobe of Goldtooth's brain.

55. As a direct and proximate cause and result of Western's acts and omissions as alleged, Goldtooth suffered catastrophic injuries for which Western is responsible.

56. Western was fined by the Occupational Safety & Health Administration for its violation of 29 CFR 1926.502(1)(3).

ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

57. This Complaint is brought against all of Western's employees and agents involved in this incident, including managerial agents, safety personnel, and supervisors.

58. Western is a corporation that can only act through its employees, officers, and agents. As the employer of those who set policy and play an active or passive role in hiring, training, or supervising employees, Defendant is responsible for its tortious acts and/or omissions in negligently failing to properly hire, train, and supervise its employees, officers, and agents.

59. Defendant is liable for the acts and omissions of its officers, directors, employees, agents, managerial agents, safety personnel, and supervisors who set policy and procedures, authorize the doing and manner of the acts in question, and who ratified or approved the actions which were the direct and proximate cause of Plaintiff's injuries and damages.

60. On August 3, 2016, Western was subject to 29 U.S.C.A. 654.

61. 29 U.S.C.A. 654 states "Each employer (1) shall furnish to each of his employees employment and a place of employment which are free from recognized hazards

7

that are causing or are likely to cause death or serious physical harm to his employees; (2) shall comply with the occupational safety and health standards promulgated under this chapter."

62. The purpose of 29 U.S.C.A. 654 was to protect all employees, including employees of independent contractors, from injury as a result of recognized hazards.

63. Goldtooth was in the class of persons 29 U.S.C.A. 654 was designed to protect.

64. Western violated 29 U.S.C.A. 654 by failing to provide a workplace that was free from recognized hazards likely to cause death of serious physical harm.

65. On August 3, 2016, Western was subject to 29 CFR 1926.502(i)(3).

66. 29 CFR 1926.502(i)(3) states "All covers shall be secured when installed so as to prevent accidental displacement by the wind, equipment, or employees."

67. On August 3, 2016, the plywood covering the hole on the second floor of the "main plant building" was not secured.

68. On August 3, 2016, Western was subject to 29 CFR 1926.502(i)(4).

69. 29 CFR 1926.502(i)(4) states "All covers shall be color coded or they shall be marked with the word HOLE or COVER to provide warning of the hazard."

70. On August 3, 2016, the plywood covering the hole was not color coded.

71. On August 3, 2016, the plywood covering the hole was not marked with the word HOLE or COVER.

72. The purpose of 29 CFR 1926.502(i)(3) and 29 CFR 1926.502(i)(4) is to protect employees who may encounter holes.

73. Goldtooth was in the class of persons 29 CFR 1926.502(i)(3) and 29 CFR 1926.502(i)(4) were designed to protect.

74. Western violated 29 CFR 1926.502(i)(3) and 29 CFR 1926.502(i)(4) by failing to secure the plywood so that it could not be moved and failing to mark the plywood with the word HOLE or COVER.

75. On August 3, 2016, Western possessed, occupied, and controlled the land situated at 2100 East Overland, Scottsbluff, Nebraska.

76. At all relevant times, Western required all subcontractors that worked on the expansion project to agree to various safety requirements and conditions prior to entering Western's premises.

77. At all relevant times, Western maintained a representative at the work site to oversee and direct the manner in which contractors performed their work.

78. At all relevant times, Western maintained a representative at the work site to oversee worksite safety.

79. On August 3, 2016, Western owed a duty of reasonable care to all entrants on the property located at 2100 East Overland, Scottsbluff, Nebraska with regard to Western's conduct on the land that created a risk to entrants like Goldtooth, artificial conditions that pose a risk to entrants like Goldtooth, and other risks brought about by statutory obligations to entrants like Goldtooth.

80. Western owed Goldtooth a duty to act reasonably under the circumstances in light of the apparent risks.

81. Western breached its duty to act reasonably under the circumstances in light of the apparent risks.

82. Western is liable to Goldtooth for damages because it retained direction and control over the safety of the work performed by Goldtooth, Paul Reed Construction, and DSI.

83. Western supervised and controlled the creation of the hole and the covering of the hole Goldtooth fell through.

84. Western's conduct lacked reasonable care because it foreseeably combined with and/or permitted the improper conduct of Paul Reed Construction.

85. Goldtooth would not have suffered the injuries and harm that he did absent Western's conduct.

CAUSE OF ACTION I – LIABILITY FOR CONDITION OF THE PREMISES

86. On August 3, 2016, Western was in possession and control of the premises located at 2100 East Overland, Scottsbluff, Nebraska.

87. On August 3, 2016, Western was in possession and control of the "main plant building."

88. Western, through the actions of its agents and contractors, created the hole on the second floor of the "main plant building."

89. Western, through its control and direction of its agents and contractors, created the hole on the second floor of the "main plant building."

90. The hole on the second floor of the "main plant building" was a condition of the premises.

91. The hole on the second floor of the "main plant building" presented a hazard and a dangerous condition in that lawful entrants would fail to discover the hazard created by the condition.

92. Western knew, or through the exercise of reasonable care, would have discovered that the hole was not properly covered and marked.

93. Western knew or should have known that an unmarked hole with an unsecured cover presented an unreasonable risk of harm to lawful entrants like Goldtooth.

94. Western should have expected lawful entrants like Goldtooth would not discover or realize the danger created by the hole.

95. Western should have expected lawful entrants like Goldtooth would fail to protect themselves against the danger created by the hole.

96. Western failed to use reasonable care to protect lawful entrants like Goldtooth against the danger posed by the hole.

97. Western's duty to use reasonable care to protect lawful entrants like Goldtooth was a nondelegable duty.

98. The hole was the proximate cause of severe damage to Goldtooth set forth more fully below.

CAUSE OF ACTION II – LIABILITY FOR ACTIVITES

PERFORMED ON THE PREMISES

99. On August 3, 2016, Western was in possession and control of the premises located at 2100 East Overland, Scottsbluff, Nebraska.

100. On August 3, 2016, Western was in possession and control of the "main plant building."

101. Western, in supervising and carrying on the expansion project, failed to use reasonable care for the safety of lawful entrants like Goldtooth.

102. Western should have expected that lawful entrants like Goldtooth would not discover the danger posed by the hole.

103. Western should have expected that lawful entrants like Goldtooth would not realize the danger posed by the hole.

104. Western should have expected that lawful entrants like Goldtooth would fail to protect themselves from the danger posed by the hole.

105. Western's duty to use reasonable care in supervising and carrying on the expansion project was a nondelegable duty.

106. Western's failure to use reasonable care was the proximate cause of severe damage to Goldtooth set forth more fully below.

## CAUSE OF ACTION III – LIABILITY FOR ACTS OF THIRD PERSONS ON THE PREMISES

107. On August 3, 2016, Western was in possession and control of the premises located at 2100 East Overland, Scottsbluff, Nebraska.

108. On August 3, 2016, Western was in possession and control of the "main plant building."

109. Western knew, or by the exercise or reasonable care, could have discovered that a third person was engaging in a negligent act.

110. Western failed to use reasonable care to protect lawful entrants like Goldtooth from the danger created by the acts of a third person.

111. Western's duty to exercise reasonable care was a nondelegable duty.

112. That Western's failure to discover the act or to protect the lawful entrant was a proximate cause of severe damage to Goldtooth set forth more fully below.

CAUSE OF ACTION IV – NEGLIGENT FAILURE TO WARN

113. Western's conduct created a risk of harm to lawful entrants.

114. Western had a duty to use reasonable care for the protection of lawful entrants onto its premises.

115. The use of reasonable care required Western to warn lawful entrants of the danger posed by the hole on the second level of the "main plant building."

116. Western failed to exercise reasonable care by failing to warn of the danger the hole created.

117. Western knew or had reason to know that the hole posed a risk to those encountering it.

118. Western knew or had reason to know that those encountering the hole would be unaware of the risk the hole created.

119. Western knew or should have known that a warning about the hole or a secured cover over the hole would be effective in reducing the risk of harm the hole created.

120. Western failed to adequately secure the cover of the hole.

121. Western failed to place effective signs warning of the hole.

122. Western failed to place effective barricades, fences, or guardrails.

123. Western's failure to warn lawful entrants including Goldtooth was the proximate cause of severe damage to Goldtooth set forth more fully below.

CAUSE OF ACTION V – NEGLIGENCE BASED ON AFFIRMATIVE DUTY

124. On August 3, 2016, Western was subject to 29 U.S.C.A. 654.

125. On August 3, 2016, Western was subject to 29 CFR 1926.502(i)(3) and 29 CFR 1926.502(i)(4).

126. These statutes required Western to act for the protection of lawful entrants including Goldtooth.

127. These statutes create an affirmative duty for Western to act.

128. The duty created by these statutes was a nondelegable duty.

129. Western failed to act as required by these statutes.

130. Western's failure to act was the proximate cause of severe damage to Goldtooth set forth more fully below.

CAUSE OF ACTION VI – NEGLIGENT PERFORMANCE

131. Western hired Paul Reed Construction to perform certain demolition work.

132. In the course of performing that work, Western allowed Paul Reed Construction to cut a hole in the second floor of the "main plant building."

133. Western further directed Paul Reed Construction to leave the hole open.

134. The presence of the hole created a risk of physical harm.

135. Western was under an affirmative duty to provide a safe workplace, secure the cover of the hole, and to mark the hole.

136. Western hired Paul Reed Construction to cut the hole and contractually required Paul Reed Construction to follow all applicable laws and regulations.

137. Western then directed Paul Reed Construction to leave the hole open and did not confirm that Paul Reed Construction had safely and adequately covered and marked the hole.

138. The failure to provide a safe workplace, secure the cover of the hole, and to properly mark the hole was the proximate cause of severe damage to Goldtooth set forth more fully below.

CAUSE OF ACTION VII – NEGLIGENT EXERCISE OF RETAINED CONTROL

139. Western was the general contractor on the expansion project at 2100 East Overland, Scottsbluff, Nebraska.

140. Western hired and entrusted Paul Reed Construction with performance of certain portions of the expansion project.

141. Western authorized Paul Reed Construction to cut the hole.

142. Western directed Paul Reed Construction to leave the hole open.

143. Western did not use reasonable care in exercising their retained control over Paul Reed Construction.

144. Western retained control over the work performed by Paul Reed Construction.

145. Western supervised the work performed by Paul Reed Construction.

146. Western directed the work performed by Paul Reed Construction with regard to the hole.

147. Western had actual knowledge of the danger which ultimately caused Goldtooth's injuries.

148. Western had constructive knowledge of the danger which ultimately caused Goldtooth's injuries.

149. Western had the opportunity to prevent Goldtooth's injuries.

150. Western's failure to use reasonable care was the proximate cause of severe damage to Goldtooth set forth more fully below.

CAUSE OF ACTION VIII – VICARIOUS LIABILITY

151. Western was the possessor of the property located at 2100 East Overland, Scottsbluff, Nebraska.

152. Western hired and entrusted Paul Reed Construction with performance of certain portions of the expansion project.

153. Regardless of Western's contractual relationship with Paul Reed Construction, Western owed Goldtooth a duty of reasonable care with regard to conduct and artificial conditions on the property that posed risks to lawful entrants.

154. Regardless of Western's contractual relationship with Paul Reed Construction, Western was required to comply with all applicable statutes and regulations and take specific precautions for the safety of lawful entrants such as Goldtooth.

155. Goldtooth's injuries occurred while Western retained possession of the premises or after Western had resumed possession upon Paul Reed Construction's completion of their work.

156. Western failed to use reasonable care in its exercise of control over Paul Reed Construction.

157. Western's failures and breach of its duty was the proximate cause of severe damage to Goldtooth set forth more fully below.

## DAMAGES

158. As a result of Western's actions, Goldtooth has suffered a severe traumatic brain injury.

159. As a result of Western's actions, Goldtooth has incurred medical costs and will incur future medical costs. Goldtooth is entitled to the reasonable value of the same.

160. As a result of Western's actions, Goldtooth has lost past wages. Goldtooth is entitled to payment of the same.

161. As a result of Western's actions, Goldtooth has a total loss of future earning capacity. Goldtooth is entitled to the value of the same.

162. As a result of Western's actions, Goldtooth has experienced past physical pain and is reasonably certain to experience future physical pain. Goldtooth is entitled to compensation for the reasonable value of the same.

163. As a result of Western's actions, Goldtooth has experienced past mental suffering and is reasonably certain to experience future mental suffering. Goldtooth is entitled to compensation for the reasonable value of the same.

164. As a result of Western's actions, Goldtooth has experienced past inconvenience and is reasonably certain to experience future inconvenience. Goldtooth is entitled to compensation for the reasonable value of the same.

165. As a result of Western's actions, Goldtooth has experienced past loss of society and companionship and is reasonably certain to experience future loss of society and companionship. Goldtooth is entitled to compensation for the reasonable value of the same.

166. As a result of Western's actions, Goldtooth has experienced past injury to his reputation and is reasonably certain to experience future injury to his reputation. Goldtooth is entitled to compensation for the reasonable value of the same.

167. As a result of Western's actions, Goldtooth has experienced past humiliation and is reasonably certain to experience future humiliation. Goldtooth is entitled to compensation for the reasonable value of the same.

168. As a result of Western's actions, Goldtooth has experienced past loss of enjoyment of life and is reasonably certain to experience future loss of enjoyment of life. Goldtooth is entitled to compensation for the reasonable value of the same.

169. Goldtooth requests this Court hold a hearing and determine what economic and non-economic damages will compensate Goldtooth for the various types of damage he has sustained.

170. Goldtooth demands Western pay him $20,000,000.00 in economic and non-economic damages.

## DSI'S AND ZURICH'S SUBROGATION INTEREST

171. Zurich, on behalf of its insured, DSI, has paid $1,604,806.04 in workers' compensation benefits pursuant to the Nebraska Workers' Compensation Act.

172. Zurich and DSI have a subrogation interest pursuant to Neb. Rev. Stat. 48-118, et seq.

173. Any recovery made from Goldtooth should be equitably distributed pursuant to Neb. Rev. Stat. 48-118, et seq.

## JURY TRIAL DEMAND

174. Goldtooth requests this matter be tried to a jury.

DATED: March 25, 2020

CODY GOLDTOOTH, Plaintiff

By: _____
Justin High #23354
High & Younes
6919 Dodge Street
Omaha, Nebraska 68132
Ph: 402-933-3345
Fax: 402-933-3020
Email: justin@hyattorneys.com
*Attorneys for Plaintiff*